UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

**GREGORY C. KRUG**                                                                                          **PLAINTIFF**

**v.**                                                                           **CIVIL ACTION NO. 4:12CV-10-M**

**DARWIN DENNISON** *et al.*                                                                          **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Plaintiff Gregory C. Krug filed a *pro se* complaint under 42 U.S.C. § 1983. He also filed a motion to amend the complaint (DN 5), which is **GRANTED.** *See* Fed. R. Civ. P. 15(a)(1) (allowing a party to amend a pleading once as a matter of course at any time before the responsive pleading is served). The Court also ordered Plaintiff to re-file his complaint on the Court's approved § 1983 complaint form, and Plaintiff complied.

This matter is now before the Court on the initial review of the complaint and amended complaints pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the Court will dismiss the action.

### I.

Plaintiff is currently an inmate at the FCI-Williamsburg. This action arises out of his previous incarceration at the Grayson County Detention Center (GCDC). He sues Darwin Dennison, Jailer of GCDC; Rita Wilson, a Medical Supervisor at GCDC; and Gary Embry, a nurse at GCDC. He sues Defendants in their official capacities only. As relief, he seeks compensatory and punitive damages.

Plaintiff states that in 2005, while he was incarcerated at FCI-Beaumont, he was diagnosed with Peripheral Vascular Disease (PVD) and was told that it would become necessary to amputate his lower left extremity if his PVD was not properly treated. Doctors in Texas removed the largest vein from Plaintiff's left leg, which he says accomplished nothing. Plaintiff

filed a *Bivens* action against FCI-Beaumont officials in 2008 based on their alleged failure to properly treat his PVD in violation of *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Plaintiff states that he was then transferred to FCI-Terminal Island. He requested to see a vascular surgeon, but his requests were denied. He also filed a *Bivens* action against officials there in 2010 based on *Estelle v. Gamble*.

Plaintiff states that he was incarcerated in GCDC from November 3, 2009, to January 18, 2011. Plaintiff states, "In response to its doctor's decision, not to treat his PVD," Plaintiff sent a Resident Requisition, which he attaches to his complaint, to Defendant Dennison. He states that Defendant Dennison "sanctioned" the infliction of cruel and unusual punishment by not permitting him to be examined by a vascular surgeon. He states that Defendant Wilson "attempted to justify" Defendant Dennison's decison by claiming that "'your condition is chronic and is not an emergency @ this time. No treatment is needed @ this time,' even though she either knew or should have known that [Plaintiff's] disease would progress, if it wasn't properly treated." Plaintiff also states that he requested again to be seen by a vascular surgeon "in light of recent and massive discoloration of his right foot." Wilson responded saying it was probably due to a change in the weather.

Plaintiff further states that he has been incarcerated at FCI-Williamsburg since March 23, 2011. He has been examined by a vascular surgeon twice, but he has not received treatment for his PVD. Plaintiff states that since he does not yet know whether either of his legs will have to be amputated, he does not know to what extent the fault would be attributable to Defendants in the instant action or officials at the other institutions where he has been incarcerated. He states that he therefore cannot determine the total amount of damages for which these Defendants are liable. Plaintiff also states that the amount of the swelling has increased since he departed FCI-

Terminal Island and "that increase has significantly increased the pain which he must endure whenever he walks more than a few meters."

Plaintiff also attaches an inmate medical request form wherein he stated, "I have two, small growths on my body, which itch constantly. Please have them removed ASAP." He states that Defendant Embry denied his request. The response on the request form states, "Apply Ammonium Lactate Lotion to areas to aide with itch." Plaintiff then submitted another inmate form in which he stated, "In light of your 11/2 denial of that day's request, pls provide me with the 4 bandages I'm going to need, once I use a razor to remove these growths from my body." Plaintiff states this request "allegedly justified [Embry's] decision to place him into solitary confinement under suicide watch, where he remained until he departed GCDC." Plaintiff states that he is entitled to actual and punitive damages for each day he was improperly held in solitary confinement as a result of Defendant Embry's misconduct.

In Plaintiff's first amended complaint (DN 5), he states that each of the Defendants "used his or her position as an official with the Grayson County Detention Center to inflict cruel and unusual punishment upon his person" in violation of the Eighth Amendment. Plaintiff also completed a § 1983 complaint form upon the Court's Order. Therein he stated that he was suing each Defendant in his or her official capacity.

**II.**

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

3

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### III.

#### A.     Official-capacity claims

Plaintiff sues Defendants in their official capacities only. Plaintiff's official-capacity claims against Defendants are actually against their employer, Grayson County. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City*

4

*of Harker Heights*, *Tex.*, 503 U.S. 115, 120 (1992). The Court will first address the second issue, *i.e.*, whether the municipality is responsible for the alleged constitutional violation.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-480 (1986)) (emphasis in original).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that the plaintiff must demonstrate "deliberate conduct").

In the instant case, Plaintiff has not alleged that Defendants acted pursuant to a municipal policy or custom in causing his alleged harm. Plaintiff's complaint appears to allege isolated occurrences affecting only him. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). As nothing in the complaint demonstrates that any of Defendants' actions occurred as a result of a policy or custom implemented or endorsed by Grayson County, the complaint fails to establish a basis of liability against the municipality and fails to state a cognizable § 1983 claim against it. Accordingly, the official-capacity claims against all Defendants will be dismissed for failure to state a claim upon which relief may be granted.

B.  **Deliberate indifference to medical needs**

The Court notes that, even if Plaintiff had sued Defendants in their individual capacities for deliberate indifference related to the alleged denial of medical treatment, the claims would still fail. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). In order for a claim to rise to the level of an Eighth Amendment violation, "a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837-38. Therefore, to prove a prison official is liable under the Eighth Amendment for denial of medical treatment, the prisoner must first demonstrate the existence of a "sufficiently serious" medical need. *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005). The prisoner must also demonstrate that the prison

official subjectively possessed "'a sufficiently culpable state of mind in denying medical care.'" *Id.* (quoting *Farmer*, 511 U.S. at 834).

However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Here, Plaintiff complains that he was denied treatment for PVD and for the removal of growths on his body. Based on a review of the complaint and Plaintiff's attachments, it is clear that Plaintiff was seen by the Medical Department for his PVD but disputes the fact that he was not seen by a specialist. It is clear that he also received treatment for the growths on his body in the form of lotion. He does not therefore allege that he was denied treatment, but his dispute is over the adequacy of the treatment. His deliberate-indifference claims against Defendants in their individual-capacities would therefore be subject to dismissal.

C.  **Solitary confinement/suicide watch**

Furthermore, if Plaintiff had brought individual-capacity claims against Defendants based on his placement in solitary confinement and on suicide watch, the individual-capacity claims also would be subject to dismissal. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). "[H]arsh 'conditions of confinement' may constitute cruel and unusual punishment unless such conditions 'are part of the penalty that criminal offenders pay for their offenses against society.'" *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Rhodes*, 452 U.S. at 347). However, the alleged conduct must reflect an "unnecessary and wanton infliction of pain" to fall within the ambit of conduct

7

proscribed by the Eighth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle*, 429 U.S. at 103). Plaintiff does not allege that he was denied basic human needs while in solitary confinement or placed on suicide watch. *See Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145 (6th Cir. 2002) ("Merchant presented no evidence that he was denied basic human needs or was otherwise subjected to cruel and unusual punishment by virtue of the conditions in administrative detention or disciplinary segregation."). Therefore, had Plaintiff brought individual-capacity claims based on being put in solitary confinement or on suicide watch, they would be subject to dismissal.

For the foregoing reasons, the Court will dismiss the action by separate Order.

Date:   May 17, 2012

                                              **Joseph H. McKinley, Jr., Chief Judge**
                                              **United States District Court**

cc:      Plaintiff, *pro se*
          Defendants
          Grayson County Attorney
4414.010